# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**BAGINSKI POTATO COMPANY, LTD.,**
          Plaintiff,

   v.                                                                       Case No. 11-C-0439

**CUSTOM CUTS FRESH, LLC and**
**BRADLEY BECKMAN,**
          Defendants.

---

## DECISION AND ORDER

On May 6, 2011, plaintiff Baginski Potato Company, Ltd., filed this action against Custom Cuts Fresh, LLC ("Custom Cuts") and Bradley Beckman pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, et seq. Before me now is plaintiff's motion for a temporary restraining order ("TRO").

PACA regulates trading practices in the perishable agricultural commodities industry. Among other things, PACA requires produce buyers to make "full payment promptly" to their sellers. 7 U.S.C. § 499b(4). To protect sellers from buyers who fail to make prompt payment, PACA includes a statutory trust provision, 7 U.S.C. § 499e(c). Under this provision, perishable agricultural commodities, inventories of food or other derivative products, and any receivables or proceeds from the sale of such commodities or products, are to be held in a non-segregated floating trust for the benefit of unpaid sellers. This trust is created by operation of law upon the purchase of produce, and the produce buyer is the statutory trustee. To protect the assets of the trust, the unpaid supplier must give the trustee written notice of intent to preserve the trust within thirty calendar days after payment was due. Alternatively, the unpaid seller may provide notice

of intent through its ordinary and usual billing or invoice statements.  See Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc., 222 F.3d 132, 136 (3d Cir. 2000).  For produce sellers, a principal benefit of the trust is that they are placed first in line among creditors for all produce-related assets if the produce dealer declares bankruptcy.  Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d 154, 156 (11th Cir. 1990).

Between November 2, 2010 and January 20, 2011, plaintiff sold $87,904.81 worth of potatoes to Custom Cuts on credit.  On its usual invoices, plaintiff provided notice of its intent to preserve trust benefits.  To date, Custom Cuts has not paid plaintiff for the potatoes, and payment is overdue.  Moreover, a check that Custom Cuts tendered to plaintiff in January of this year was returned for insufficient funds.  Plaintiff thus brought this action to enforce its trust rights against Custom Cuts and its owner, Bradley Beckman.

In cases in which produce buyers fail to pay their suppliers and the supplier is able to show that the buyer is dissipating trust assets – that is, able to show that the buyer has sold the produce and is in the process of using the proceeds for purposes other than paying the supplier – courts will often grant the supplier a preliminary injunction requiring the buyer to escrow the proceeds from the produce sales pending resolution of the lawsuit.  See Tanimura & Antle, 222 F.3d at 139-41; Frio Ice, 918 F.2d at 160.  This is because when the buyer appears to be dissipating the trust, there is a risk that the seller will be unable to collect a judgment entered against the buyer at the end of the case.  The seller is thus deemed to lack an adequate remedy at law and to be at risk of suffering irreparable injury.  Tanimura & Antle, 222 F.3d at 139.  In the present case, plaintiff seeks such a preliminary injunction and points to the check returned for insufficient funds as evidence that Custom Cuts is dissipating trust assets and in serious financial trouble.

Even if plaintiff is entitled to a preliminary injunction requiring Custom Cuts to escrow the proceeds from the sale of plaintiff's potatoes, however, that does not mean it is also entitled to an ex parte restraining order. To obtain ex parte relief, plaintiff must not only show that the criteria for obtaining a preliminary injunction are satisfied, it must also "clearly show" that irreparable injury, loss, or damage will result before the defendants can be heard in opposition. See Fed. R. Civ. P. 65(b)(1). This is because "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439 (1974).

In the present case, plaintiff's counsel contends that a TRO should issue without notice to defendants because "counsel believes that advising Defendants of the pendency of this [action] will only allow Defendants the opportunity to transfer trust assets and make unlawful payments on junior non-trust debts with PACA trust assets." (Attorney Certification [Docket #3-2] at 1.) However, by all appearances Custom Cuts is a legitimate business, see http://www.ccuts.com/, and there is no reason to suppose that once it learns of the pendency of this suit it will begin to intentionally divest itself of trust assets in order to prevent plaintiff from recovering them. Anything is possible, of course, but in order to obtain relief without providing a defendant with a chance to defend itself, the plaintiff must demonstrate that its fears about the defendant dissipating trust assets in bad faith immediately upon learning of this lawsuit are based on something other than speculation.

Although it is possible that Custom Cuts will in the ordinary course of its business further dissipate trust assets before an adversarial hearing on plaintiff's motion for preliminary injunction can be held, this possibility is not enough to justify ex parte relief.

This case does not appear to be factually complex, and so a hearing on the motion for preliminary injunction can be held in as little as a few days from the time plaintiff provides defendants with notice of its motion. And as far as the record reveals, it has been months since Custom Cuts stopped paying plaintiff's bills, and the check returned for insufficient funds is dated January 20, 2011. Plaintiff does not explain why it waited until May 6, 2011 to file this lawsuit, and so it is hard for me to conclude that an extra few days' delay will cause plaintiff serious irreparable harm.

Accordingly, plaintiff's motion for a temporary restraining order will be denied. Plaintiff should attempt to provide defendants with immediate notice of this order and its motion for a preliminary injunction and attempt to determine who will be representing defendants in this suit. The parties should then contact the court to schedule further proceedings on the motion for preliminary injunction. In the meantime, I will order that defendant file a written response to the motion for a preliminary injunction within five days.

The parties are advised that I am not the district judge assigned to this action. I was assigned to this motion as the court's duty judge because this case is currently assigned to Magistrate Judge Callahan, who cannot grant injunctive relief unless both parties consent to the exercise of jurisdiction by a magistrate. If either party refuses to consent to the magistrate's jurisdiction, the Clerk of Court will randomly reassign this action to a district judge. Thus, before the parties contact the court to schedule further proceedings on the motion for preliminary injunction, they should each complete and file their magistrate consent/refusal forms. If all parties consent, they should contact the chambers of Judge Callahan to schedule further proceedings. If any party refuses to consent, then the parties

should contact the chambers of the judge randomly assigned to conduct further proceedings in this case.

## CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for a temporary restraining order is **DENIED**.

**IT IS FURTHER ORDERED** that defendants file a written response to plaintiff's motion for preliminary injunction within five days of being served with the motion and this order.

Dated at Milwaukee, Wisconsin, this 10th day of May, 2011.

/s_____
LYNN ADELMAN
District Judge