# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**BAGINSKI POTATO COMPANY Ltd, et al.,**

        Plaintiffs,

        -vs-                                       **Case Nos. 11-C-439,
11-C-638, 11-C-647,
11-C-699, 11-C-701**

**CUSTOM CUTS FRESH LLC,
BRADLEY BECKMAN,**

        Defendants.

---

# DECISION AND ORDER

---

This is an action against Custom Cuts Fresh LLC and its principal, Bradley Beckman, pursuant to the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499a, et seq. In a series of orders [ECF Nos. 16, 40, 60], the Court consolidated five separate actions, enjoined the defendants from dissipating assets of the statutory PACA trust, and established a claims procedure for claimants to the trust. The balance currently held in the trust account is $651,557.81. Most of this balance ($531,001.30) is the result of an auction sale of the assets of Custom Cuts. One of the intervening plaintiffs, Anthony Marano Company, claims that it holds a priority security interest in the proceeds of the auction based upon a promissory note executed in 2007. Marano also asserts that it has a PACA trust claim in the amount of $2,207,533.55 for produce sold and delivered in 2010 and 2011.

PACA creates a statutory trust for unpaid sellers of perishable agricultural commodities.[1] As explained by the regulation, the trust is "made up of perishable agricultural commodities received in all transactions, all inventories of food or other products derived from such perishable agricultural commodities, and all receivables or proceeds from the sale of such commodities and food or products derived therefrom. Trust assets are to be preserved as a nonsegregated 'floating' trust. Commingling of trust assets is contemplated." 7 C.F.R. § 46.46(b). Through this trust, the sellers of agricultural commodities maintain a right to recover against the purchasers superior to all creditors, including secured creditors. *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995). A party opposing a claim that a PACA buyer's assets are subject to a PACA trust bears the burden of demonstrating that the disputed assets were not acquired with proceeds from the sale of produce or produce-related assets. *In re Bear Kodiak Produce, Inc.*, 283 B.R. 577, 583 (Bankr. D. Ariz. 2002) (citing *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.*, 986 F.2d 1010, 1014 (6th Cir. 1993)).

Marano argues that the assets sold at the auction are not subject to the trust because the earliest alleged unpaid sale occurred after that equipment was purchased by Custom Cuts. However, the assets of a PACA buyer are presumed to be part of a PACA trust unless it is shown that (1) no PACA trust existed when the asset in question was purchased; or (2) the

---

[1] "Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid sellers, sellers, or agents." 7 U.S.C. § 499e(c)(2).

asset was not purchased with PACA trust assets; or (3) subsequent to purchasing the asset, the buyer paid in full all suppliers, thereby terminating the trust. *In re Kornblum & Co., Inc.*, 81 F.3d 280, 287 (2d Cir. 1996). At his deposition, Bradley Beckman testified that the assets sold at the auction were purchased with cash derived from the sale of produce, and there was never a time when all PACA creditors were paid in full. ECF No. 114, Ex. 4, Beckman Dep. at 19-20. Recognizing that it cannot meet any of the requirements set forth in *Kornblum*, Marano argues that the Court should apply an earlier Eighth Circuit case which held that a PACA trust does not include property acquired before the PACA claimant enters into a PACA transaction with the produce buyer. *Six L's Packing Co. v. Des Moines State Bank*, 967 F.2d 256, 259 (8th Cir. 1992). As one court observed, the holding in *Six L's* "seems to conflict with the express language of § 499e(c)(2), in that it prevents a late supplier from sharing in PACA trust assets acquired prior to that supplier's first transaction with the buyer." *Bear Kodiak* at 583; *see also Besteman Co. v. Carter's, Inc.*, 439 F. Supp. 2d 774, 778 (W.D. Mich. 2006) (following *Kornblum* and rejecting *Six L's*). Moreover, the broader holding in *Kornblum* more fully abides PACA's underlying recognition that "sellers of fresh fruits and vegetables are unsecured creditors and receive little protection in any suit for recovery of damages where a buyer has failed to make payment as required by the contract." *Kornblum* at 283 (citing H.R. Rep. No. 543, 98th Cong., 1st Sess. 3 (1983)). Since Marano cannot meet its burden under the standard set forth in *Kornblum*, the proceeds of the auction will be considered part of the PACA trust.

-3-

As for Marano's PACA claim, the Court's PACA Order set forth deadlines for filing claims, objections, and responses to the objections. Under ¶ 34 of the Order,

> the claimant and the objecting party shall thereafter exercise best efforts to resolve any Valid Objections. In the event the claimant and the objecting party are unable to resolve such dispute or the Valid Objection is not withdrawn, the claimant shall file a motion for determination of the validity of the disputed claims on or before *Monday, January 16, 2012*, the Deadline to File Motion to Rule on Objections. The Motion to Rule on Objections must set forth in detail the legal and factual basis for the validity of the disputed claim. *Any claimant that does not file a timely Motion to Rule on Objections shall be deemed to have waived that portion of its claim subject to the objection.*

Emphasis added. On January 18, two days after the deadline passed, Marano filed a motion to rule on objections or, in the alternative, to extend the deadline to file a motion to rule on objections.

A motion to extend a deadline filed after the deadline expired may be granted only if the party "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The excusable neglect inquiry is an "equitable one," taking into account "all relevant circumstances surrounding the party's omission," such as "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The PACA plaintiffs argue that Marano must establish good cause in addition to excusable neglect. The Seventh Circuit recently observed that good cause and excusable neglect occupy "different domains." *Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012). "The excusable neglect standard applies in situations in which

-4-

there is fault; in such situations, the need for extension is usually occasioned by something within the control of the movant. On the other hand, the good cause standard applies in situations in which there is no fault – excusable or otherwise." *Id.* (quoting advisory committee notes to the 2002 amendments to Fed. R. App. P. 4(a)(5)). This appears to be an excusable neglect case, so the Court will confine its inquiry to that standard.

Marano and counsel for the objecting plaintiffs exchanged phone calls and emails regarding the claim on January 11-13. On January 13, counsel for Marano responded to an e-mail stating: "We are willing to discuss your objections. Please send me dates and times when you are available and we will set up a teleconference." This e-mail was sent after the close of business on a Friday, the last business day before the January 16 deadline, which happened to fall on the Martin Luther King Holiday. Marano did not receive any response to his request for a telephone conference. On January 18, Lawrence Ordowers, attorney for Marano, phoned PACA plaintiff attorney Katy Koestner Esquivel. Ms. Equivel informed Mr. Ordower that she would not discuss the objections without a court order because the deadline had passed. Given the language in the PACA Order which states that the claimant and the objecting party "*shall* . . . exercise best efforts" to resolve objections, it was not unreasonable for Marano's counsel to wait for a response before filing his motion. Moreover, the duty to exercise best efforts belongs to the claimant *and* the party objecting to the claim. It is unfair for the objecting parties to sit back and do nothing to resolve the claim, then assert waiver two days after the deadline expired. Therefore, the deadline to file motions to rule on objections should be extended.

-5-

Finally, Barliant Auctions objects to the proposed distribution of funds because it fails to direct payment of the balance of its auction fees. Some cases authorize the payment of administrative expenses out of the PACA trust based on common law trust principles. *See, e.g., In re Milton Poulos, Inc.*, 947 F.2d 1351, 1353 (9th Cir. 1991); *In re Southland + Keystone*, 132 B.R. 632, 643 (B.A.P. 9th Cir. 1991); *In re United Fruit & Produce Co.*, 119 B.R. 10, 13 (Bankr. D. Conn. 1990). These cases are distinguishable because, with the exception of Marano, Barliant's auction agreement was negotiated without the knowledge of any of the PACA plaintiffs. Marano was a signatory to the auction agreement, but at that point, Marano was likely trying to collect on its promissory note, which the Court already held cannot trump the interests of the other PACA plaintiffs. The Court allowed the auction to go forward on the condition that half of Barliant's fee would be deposited into the trust account. Half of Barliant's fee is $61,181.60, a substantial amount which the PACA plaintiffs suggest they may seek to recoup. Accordingly, Barliant's purpose was not to "increase the value of the trust *res* for the benefit of the PACA trust beneficiaries." *Pacific Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 284 (3d Cir. 2006). Barliant was simply acting in the ordinary course of its own business. *Id.*; *see also R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F. 3d 238, 243 (2d Cir. 2006) (railroad "provided its services directly to [the PACA buyer], and did not act at the court's direction or for the exclusive benefit of the PACA beneficiaries"); *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 488 (2d Cir. 2001). Therefore, the Court will overrule Barliant's objection.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Marano's motion to extend the deadline to file a motion to rule on objections [ECF No. 100] is **GRANTED**;

2. Tropic Banana's motion to intervene and for relief from the PACA Order [ECF No. 102] is **GRANTED**;

3. The PACA plaintiffs' motion for disbursement of funds [ECF No. 104] is **GRANTED**;

4. Barliant's objection to the distribution of funds [ECF No. 106] is **OVERRULED**; and

5. Within **ten (10) days** of the date of this Order, the PACA plaintiffs shall file an amended PACA Claims Procedure, consistent with the foregoing opinion.

Dated at Milwaukee, Wisconsin, this 21st day of June, 2012.

BY THE COURT:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**